UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DOUGLAS INMAN,<br><br>           Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>           Defendant. | CAUSE NO. 1:20-CV-231 DRL |

OPINION & ORDER

Douglas Inman appeals from the Social Security Commissioner's final judgment denying disability and disability insurance benefits and supplemental security income and requests remand for further consideration. Having reviewed the underlying record and the parties' arguments, the court affirms and denies Mr. Inman's request.

BACKGROUND

Mr. Inman has hypertension, major depressive disorder, intermittent explosive disorder, degenerative disc disease of the lumber spine, hyperlipidemia, obesity, neurocognitive disorder, and anxiety; and he has a history of acute ischemic stroke, leukemia, and myocardial infarctions, all of which the ALJ found to be severe [R. 12]. The ALJ found the following non-severe impairments: cocaine abuse in remission, alcohol abuse, and cannabis abuse [R. 13].

Mr. Inman filed Title II and Title XVI applications on April 4, 2017, alleging disability beginning on March 10, 2017 [R. 10-11]. The claims were denied initially and on reconsideration [*id.*]. He appealed to the ALJ, who concluded that Mr. Inman did not have an impairment or combination of impairments that met or medically equaled a listed impairment [R. 13]. In making this finding, the ALJ considered Mr. Inman's relevant medical history, including how that history matched his reported symptoms and limitations [R. 13-18]. The ALJ considered the persuasiveness of Mr. Inman's medical

providers; and relevant to this appeal, she found that the opinions of two providers (Nurse Thomasina Wrangham and Dr. Russell Coulter-Kern) weren't persuasive [R. 19].

The ALJ determined that Mr. Inman had the residual functional capacity to perform sedentary work with certain limitations, including no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and caring out and remembering simple, routine and repetitive tasks, and maintaining concentration for two hours at a time [R. 15]. The ALJ concluded Mr. Inman would be able to perform jobs such as addresser, table worker, and document preparer [R. 21-22]. The appeals council denied review of the decision, thereby rendering the decision final. Mr. Inman appealed.

## STANDARD

The court has authority to review the appeals council's decision under 42 U.S.C. 405(g), though review is bound by a strict standard. Because the council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering an adult claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4) (disability) & 416.920(a)(4) (SSI); *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when it shifts to the Commissioner to prove the claimant can perform work in the economy. *See Young*, 957 F.2d at 389.

An ALJ must consider the following factors when evaluating a medical opinion: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). The most important factors are the opinion's support and consistency. 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). Failure to do so requires remand. *Tammy M. v. Saul*, 2021 U.S. Dist. LEXIS 112293, 24 (N.D. Ind. June 16, 2021) (Lee, J.).

For a provider's opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source

3

are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). Similarly, for a provider's opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1).

Today Mr. Inman claims that the ALJ's residual functioning capacity assessment is not supported by substantial evidence because she didn't properly weigh opinions from Dr. Russell Coulter-Kern and Nurse Thomasina Wrangham. The commissioner responds that the ALJ properly considered the opinions at issue and found them unpersuasive.

A. *Nurse Wrangham.*

The ALJ concluded that Nurse Wrangham's opinion wasn't persuasive because it was not supported by her own medical findings or consistent with the record [R. 19]. Nurse Wrangham is a board-certified psychiatric-mental health nurse practitioner [R. 692]. She first treated Mr. Inman for depression, anxiety, and anger issues on June 26, 2018 [R. 649], and then again on September 16, 2018 [R. 671] and February 5, 2019 [R. 680, 690-92], at which time she completed a medical source statement discussing Mr. Inman's depression and anxiety.

The ALJ summarized Mr. Inman's medical history with Nurse Wrangham [R. 12, 14-15]. Mr. Inman was diagnosed with major depressive disorder, major depressive affective disorder, and intermittent explosive disorder, among other ailments [R. 650]. Despite this diagnosis, Nurse Wrangham noted Mr. Inman had normal cognition, remained alert, could remember two out of three words after five minutes, had fair insight, and had no suicidal thoughts [R. 651-52]. These mental acuity observations persisted through the provider relationship [R. 674, 684].

4

Mr. Inman attended anger management group sessions during this time in which he consistently participated, was supportive, and received support [R. 667, 675, 677]. Nurse Wrangham noted the therapy sessions were "obviously" helpful for him [R. 673]. Just over four months after successfully completing the anger management program, Mr. Inman reported to Nurse Wrangham that he was overall doing well and that the medication prescribed for depression was working [R. 680]. Despite these notes, in her medical source statement, Nurse Wrangham concluded that Mr. Inman needed to miss work more than four days a month because of his moderate major depressive disorder, would have extreme difficulty maintaining social functioning, and had an inability to tolerate change [R. 690-92].

After reviewing and explaining the record in detail, the ALJ concluded that Nurse Wrangham's opinion was not persuasive because her treatment notes over their eight-month treatment relationship, which showed positive momentum based on medication and therapy, did not support the conclusions she reached [R. 19]. The ALJ thus decided that Mr. Inman's major depressive disorder, intermittent explosive disorder, and anxiety were severe impairments, but which imposed only some limits on his ability to perform work-related functions [R. 12, 15-16].

The ALJ is required to articulate the grounds for her decision rationally. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ does so by building "an accurate and logical bridge from the evidence to her conclusion." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). Here, the ALJ's persuasiveness finding is supported by substantial evidence that allows the court to follow the reasoning from the evidence, based on Nurse Wrangham's treatment notes, to the ALJ's conclusion that Nurse Wrangham's opinion was not persuasive. Nurse Wrangham's notes don't provide any basis for her social interaction conclusion or her absence conclusion. Instead, they suggest a patient who demonstrated normal cognition, was doing well on his medication, actively participated in and benefitted from group therapy, and whose mental illness was being well-managed [R. 19]. There is no

5

indication from the medical records that Mr. Inman would need frequently to miss work, that he could not tolerate being around others, or that he could not tolerate change. The ALJ recognized and explained this lack of supportability and found her opinion unpersuasive.

As for consistency, the ALJ concluded Nurse Wrangham's opinion was likewise belied by the medical record [R. 19]. At his group anger management classes, which the ALJ described elsewhere in the decision and specifically points to in her persuasiveness findings, Mr. Inman was engaged with his fellow group-goers, timely, and reported little to no anger [R. 14, 19, 667, 675, 677]. These observations were repeated over the multi-month therapy process [*id.*]. As the ALJ noted, Mr. Inman benefitted from his group anger management classes and was an active participant [R. 15, 19]. The record shows no indication he struggled relating to individuals or communicating with them in a personal and intimate setting. He consistently reported having low levels of anger during the sessions. Further, as the ALJ elsewhere noted, Mr. Inman still has friends, goes to the grocery store, never alleged problems getting along with others, remained cooperative during examinations, handled changes to his routine, and took medications that helped with anger [R. 14, 239-42, 366, 402, 622, 646]. The facts that emerge from the medical record, which the ALJ faithfully recounts, are not consistent with Nurse Wrangham's conclusion of Mr. Inman's limitations.

Mr. Inman is correct that some improvement in symptoms doesn't mean an individual is free from the burdens of mental illness [ECF 15 at 20; ECF 19 at 2]. *See Fuchs v. Astrue*, 873 F. Supp.2d 959, 973 (N.D. Ill. 2012). But the ALJ never said her persuasiveness finding was based on Mr. Inman being "cured." Instead, it was based on the lack of support for Nurse Wrangham's conclusions by her own treatment records, and its inconsistency with the medical record as a whole—records the ALJ meticulously described in her decision. Because the ALJ's supportability and credibility findings are supported by substantial evidence, there was no error in her findings.

B.      *Dr. Coulter-Kern.*

The ALJ concluded that Dr. Coulter-Kern's opinion was supported by his medical findings but inconsistent with the entire medical record [R. 19]. Dr. Coulter-Kern is a licensed psychologist who served as a consultative examiner for Mr. Inman. In his examination, which occurred four months after Mr. Inman had a stroke, Dr. Coulter-Kern noted that Mr. Inman claimed he had thoughts of suicide, lost track of his thoughts, and had difficulties with "word finding" [R. 399]. Dr. Coulter-Kern also noted that Mr. Inman works "okay" with others and gets along well with his family [R. 400].

Dr. Coulter-Kern performed various mental status tests on Mr. Inman. He was unable to recall three words after five minutes, but was able complete some calculations, interpret proverbs, analyze similarities and differences, and was oriented with person, place, and time [R. 401-02]. Based on Mr. Inman's performance, Dr. Coulter-Kern opined that he would have significant difficulty understanding, remembering, and carrying out instructions; maintaining attention and concentration; responding appropriately to supervision and coworkers in a work setting, and coping with work pressures [R. 402]. Dr. Coulter-Kern stated that Mr. Inman was cooperative through the evaluation and had the ability to manage his own affairs without assistance, however [R. 402].

Although the ALJ concluded that Dr. Coulter-Kern's opinion was supported by his own medical notes, it wasn't consistent with the "longitudinal evidence" showing that "medication treatment and anger management therapy improved his depression and anxiety and eliminated his suicidal thoughts" [R. 19]. The ALJ said Dr. Coulter-Kern's opinion appeared to be based on Mr. Inman's reported symptoms and not based on an independent treatment history [*id.*]. Finally, the ALJ concluded that the totality of the record indicated that Mr. Inman could move about the community on his own and maintain appropriate relationships with supervisors and coworkers, without issues of attention, memory, or an inability to follow instructions or cope with change [R. 19, 240-42].

Mr. Inman argues this assessment was error because discussing improvement in symptoms is not sufficient to support the consistency finding in light of the cyclical nature of mental illness. The ALJ acknowledged that Dr. Coulter-Kern's finding was based on an assessment done within four months of Mr. Inman suffering a stroke and didn't discredit the challenges Mr. Inman faces regarding his cognition. Instead, the ALJ concluded that these challenges were not so great as to prevent him from engaging in any other kind of substantial gainful work, particularly in light of the progress he reported making from his medication and therapy, all of which occurred over a year after Dr. Coulter-Kern's consultive examination [R. 19, 399 (Dr. Coulter-Kern's visit occurred August 11, 2017), 640 (mental health center intake occurred on August 15, 2018) & 657 (group therapy began on August 26, 2018)]. And these improvements weren't just marked during one examination, like the one that Dr. Coulter-Kern performed, or indeed during one "good day," recognizing that mental health may result in goods days and bad days; but instead demonstrated longitudinally, as the ALJ noted, over the course of Mr. Inman's medication and anger therapy treatment almost a year after his stroke [R. 19].

The ALJ considered both the consistency and the supportability of Dr. Coulter-Kern's opinion, concluding that the lack of consistency with the medical record as a whole did not support a persuasiveness finding. Because the ALJ used substantial evidence to build a logical bridge between the longitudinal evidence in Mr. Inman's medical record and the conclusion about Dr. Coulter-Kern's opinion, the ALJ did not err.

CONCLUSION

The ALJ thoroughly tracked Mr. Inman's medical history and provided meaningful analysis of his abilities in light of that history, and as required by 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The ALJ's conclusions were based on substantial evidence, without error. The court thus AFFIRMS the ALJ's decision and DENIES Mr. Inman's request for a remand [ECF 1].

SO ORDERED.

September 7, 2021                                              *s/ Damon R. Leichty*
                                                               Judge, United States District Court